**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **WORLDCARE LIMITED CORPORATION,** | )     CASE NO. 8:11CV99 |
|         **Plaintiff,** | ) |
|         v. | )     **MEMORANDUM** |
| | )     **AND ORDER** |
| **WORLD INSURANCE COMPANY,** | ) |
|         **Defendant.** | ) |

This matter is before the Court on the Motion for Preliminary Injunction (Filing No. 5) filed by Plaintiff WorldCare Limited Corporation. The issues raised by this Motion have been fully briefed, and the parties appeared before the Court on April 12, 2010, to argue their respective positions. For the reasons discussed below, the Motion will be granted and a preliminary injunction will issue.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff WorldCare Limited Corporation ("WorldCare") is incorporated under the laws of Bermuda with its principal place of business in Boston, Massachusetts. WorldCare has sold second-opinion telemedicine services since 1992. WorldCare sells its second-opinion services through insurance policies, typically as an additional benefit that insurance companies can offer their insureds as part of their health plans. WorldCare states that its services allow people access to quality medical advice to supplement what they receive from their current healthcare providers. Under WorldCare's services, second opinions are given through teams of highly specialized physicians, to provide diagnoses and recommend treatment plans based on the latest medical research. Insureds and/or patients obtain medical advice over the phone or through the Internet from WorldCare's strategic partners, regardless of the physical location of the physician or the patient. On

June 4, 1996, WorldCare successfully applied to the United States Patent and Trademark Office ("PTO") for a service mark on "WORLDCARE" for the purposes of selling "medical services, namely, providing medical information via telephone and/or interactive television and/or computer network." WorldCare's "first use" of the mark occurred on June 28, 1996. WorldCare has also registered other trademarks founded on the WorldCare name and symbol.  WorldCare continues to provide its services under the WORLDCARE mark.

Defendant World Insurance Company ("World Insurance") is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  World Insurance provides health insurance products and services under its house mark, including basic medical, major medical, comprehensive major medical, short-term major medical and dental insurance. World Insurance adopted the designation WORLDCARE at least as early as February 2003, as a brand name for use in connection with underwriting and administration of health insurance, preferred provider plans and health savings accounts.  World Insurance has used its iteration of the WORLDCARE mark consistently in commerce since that time. World Insurance markets products and services under the WORLDCARE mark in thirty-three states to individuals, families, and small business owners.  Of the 56,369 World Insurance policies across the country, 29,596 are branded with the WORLDCARE mark.

On March 28, 2005, World Insurance applied to the PTO for federal registration of its WORLDCARE mark for use in connection with "underwriting and administration of health insurance, preferred provider plans and health savings accounts." The PTO Office Examiner rejected World Insurance's application on the basis that it was likely to be confused with WorldCare's registered mark, WORLDCARE GLOBAL HEALTH PLAN. The PTO's decision stated that the dominant wording in the marks was identical, and the

remaining wording in WorldCare's mark was descriptive and had been disclaimed by WorldCare. The PTO also determined that the services to be provided under the respective iterations of the WORLDCARE mark were identical. Specifically, the PTO noted that World Insurance's services were "underwriting and administration of health insurance, preferred provider plans and health savings accounts." (Filing No. 25-8 at 3.) While services provided under the WORLDCARE GLOBAL HEALTH PLAN were described as "healthcare insurance underwriting services and administration of pre-paid benefits plans." (*Id.*) The PTO ultimately refused World Insurance's registration stating that "[b]ecause the services and the dominant feature of the marks are identical, consumers would likely be confused as to the source of the services."

WorldCare claims it has evidence of actual confusion in the market place as a result of World Insurance's use of the WORLDCARE mark. In the summer of 2009, WorldCare began receiving calls from hospitals regarding the World Insurance "WorldCARE" insurance products. Specifically, hospitals called WorldCare to inquire about benefits under WorldCARE insurance health plans. WorldCare thereafter demanded that World Insurance "cease and desist" using the "WorldCARE" mark because it was causing confusion in the market place in violation of the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a), and other applicable law. World Insurance instead suggested that the parties negotiate a settlement and a licensing agreement. The parties sought to negotiate a business resolution, but those negotiations ultimately failed.

WorldCare brought the present action on September 21, 2010, in the United States District Court for the District of Connecticut (Filing No. 1), seeking damages and injunctive relief under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a). The same day, WorldCare

filed its Motion for Preliminary Injunction (Filing No. 5). On February 28, 2011, the District of Connecticut transferred the case to this Court under 28 U.S.C. § 1406(a). (Filing No. 42.) On April 12, 2011, a hearing before this Court was held on WorldCare's Motion for Summary Judgment. WorldCare seeks preliminary injunctive relief against World Insurance's use of the WORLDCARE mark or any similar name or mark.

### STANDARD

A preliminary injunction is considered an extraordinary remedy, and the burden of proving each of the *Dataphase* factors lies with the party seeking the injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). When considering a motion for preliminary injunctive relief, a district court should weigh "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C.L. Systems Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*).

### DISCUSSION

**I.     The Balance of Harm**

The Court first addresses the balance of harms between the parties should a preliminary injunction issue. The day before the hearing on April 12, 2011, World Insurance submitted the affidavit of Elizabeth Powell, a vice president overseeing health markets for World Insurance (Filing No. 70.) In her Affidavit, Powell states that, in mid-November 2010, World Insurance "decided to temporarily phase out its external use of the mark WORLDCARE." (*Id.* ¶ 3.) The phase-out began at that time and was primarily

complete in January 2011. (*Id*.) World Insurance still uses the term WORLDCARE internally, but external marketing, including advertising, the company website, and other materials for customers have been revised to eliminate use of the WORLDCARE mark. (*Id*.) Powell stated that this "is a temporary change, as [World Insurance] hopes to resume its use of WORLDCARE after this trademark dispute is resolved." (*Id*.) Powell further stated that by phasing out use of the WORLDCARE mark as opposed to immediate stoppage, World Insurance minimized costs and disruptions to business. (*Id*. ¶ 4.)

Based on Powell's Affidavit, this factor tips significantly in favor of WorldCare. The issuance of a preliminary injunction would not place additional burdens on World Insurance because it has stopped using the WORLDCARE mark externally. In essence, a preliminary injunction would order World Insurance to do what it has agreed to do. Nevertheless, World Insurance indicated at the hearing that it was not willing to consent to issuance of a preliminary injunction because there was no legal justification for it and it could be harmed by a negative public perception. Though that may be, the Court's analysis must focus of the burdens and costs placed on World Insurance. *Dataphase*, 640 F.2d at 114 (8th Cir.1981). Because of World Insurance's own action, its burden associated with an injunction has been significantly minimized. Thus, this factor weighs in favor of issuance of a preliminary injunction.

II.     **Probability of Success on the Merits**

In further assessing whether a preliminary injunction should be granted in this case, the other factors greatly depend on WorldCare's probability of success on the merits. WorldCare brings trademark infringement claims under Lanham Act, 15 U.S.C. §§ 1114(a)

and 1125(a). Courts analyze infringement claims under §§ 1114 and 1125 using the same criteria. *See, e.g., Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1008-09 (8th Cir. 2011). To establish a claim for trademark infringement, "a trademark owner [must] prove that it has ownership or rights in the trademark and that the defendant has used the mark in connection with goods or services in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services." *Id.* The Court determines that WorldCare is likely to show it has acquired rights in the WORLDCARE mark, and that World Insurance's use of the WORLDCARE mark is likely to cause confusion.

**1. Trademark Acquisition**

The parties do not dispute that WorldCare has acquired rights in the WORLDCARE mark. Neither do the parties dispute that WorldCare has previously owned at least three WORLDCARE-formative trademark registrations. These include:

> WORLDCARE, Registration No. 2220736 for use in connection with medial services, namely, providing medical information via telephone and/or interactive television and/or computer network;
>
> WORLDCARE & Design, Registration No. 2118465 for use in connection with medial services, namely, providing medical information via telephone and/or interactive television and/or computer network;
>
> WORLDCARE GLOBAL HEALTH PLAN, Registration No. 2829051 for use in connection with (a) administration of medical, hospital and related health care services, (b) healthcare insurance underwriting services and administration of pre-paid benefits plans, and (c) healthcare services, hospital services, and telemedicine services.

(Filing No. 24 at 4.)

World Insurance states that WorldCare failed to renew its ownership in the WORLDCARE GLOBAL HEALTH PLAN in the time allowed by 15 U.S.C. § 1059(a). Nevertheless, ownership of registration is not determinative of ownership of trademark rights, and "the absence of federal registration does not unleash the mark to public use." *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 992 (8th Cir. 1993) (citation omitted). World Insurance does not otherwise dispute WorldCare's rights in any iterations of the WORLDCARE mark. WorldCare continuously has offered its services and products under the WORLDCARE mark. Therefore, WorldCare is likely to show that it has acquired an ownership interest in the WORLDCARE mark.

### 2. Likelihood of Confusion

WorldCare must show that it is likely to succeed in proving that World Insurance's use of the WORLDCARE mark is likely to cause confusion. *Sensient Tech. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 n. 3 (8th Cir. 2010); To determine whether a likelihood of confusion exists, the Eighth Circuit applies a six-factor test, no part of which is dispositive standing alone:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

*Frosty Treats v. Sony Computer Ent. Am. Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005). Courts use these factors "as a guide to determine whether a reasonable jury could find a likelihood of confusion." *Id.* The analysis of the factors based on the evidence and

7

arguments submitted demonstrates that WorldCare is likely to demonstrate a likelihood of confusion.

### A. Strength of the Owner's Mark

World Insurance argues that the WORLDCARE mark is weak because it is widely used. In analyzing the strength of the owner's mark, the Eighth Circuit has recognized that a "strong and distinctive trademark is entitled to greater protection than a weak or commonplace one." *Id.* (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). The strength of a mark is made of both conceptual strength and commercial strength in the marketplace. *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); *ConAgra, Inc. v. George A. Hormel & Co.*, 784 F. Supp. 700, 708 (D. Neb. 1992), *aff'd*, 990 F.2d 368 (8th Cir. 1993); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:83 (4th ed. 2010). The rationale of analyzing both categories of strength is that "even a 'weak' mark is entitled to protection against subsequent registration or use by another for a closely similar format on closely competitive goods or services." *ConAgra*, 784 F. Supp. at 707. Here, the evidence at this early stage suggests that WorldCare is likely to show that its use of the WORLDCARE mark is strong both conceptually and in the relevant marketplace.

### *I. Conceptual Strength*

To measure conceptual strength, the mark is classified into one of four categories from weakest to strongest: generic, descriptive, suggestive, or arbitrary or fanciful. *Sensient*, 613 F.3d at 763. WorldCare argues that it's use of the WORLDCARE mark is suggestive. "A suggestive mark is one that requires some measure of imagination to reach

a conclusion regarding the nature of the product." *Duluth News-Tribune, a Div. of Nw. Publ'n, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996) (citing *American Home Products Corp. v. Johnson Chemical Co. Inc.*, 589 F.2d 103, 106 (2d Cir.1978) (the mark "Roach Motel" was suggestive because "[w]hile roaches may live in some motels against the will of the owners, motels are surely not built for roaches to live in")). Suggestive marks are "entitled to protection regardless of whether they have acquired secondary meaning." *Frosty Treats*, 426 F.3d at 1005.

World Insurance does not dispute WorldCare's argument that its use of the WORLDCARE mark is suggestive and based on the evidence before the Court, WorldCare is likely to prove that the WORLDCARE mark is suggestive. The WORLDCARE mark conveys the impression that WorldCare's product involves some type of care, but does not describe the service. Thus, the mark requires at least some imagination to reach a conclusion about the nature of WorldCare's product. Thus, the WORLDCARE mark is conceptually strong.

    *ii. Commercial Strength*

World Insurance argues that the WORLDCARE or WORLD CARE mark is weak because it is in use by a number of third parties for various goods and services. Under this second prong, "a mark can start off weak, but become strong in the marketplace." *ConAgra*, 784 F. Supp. at 712. In the likelihood-of-confusion context, the commercial strength of a mark is based on the "public recognition and renown" of the mark as shown by the amount of advertising, sales volume, features and reviews in publications, and survey evidence. *See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee*

9

*En 1772*, 396 F.3d 1369, 1374-76 (Fed. Cir. 2005). The relevant market for analyzing commercial strength is "the class of customers and potential customers of a product or service, and not the general public." *Id.* at 1375.

WorldCare asserts that it is likely to prove its mark is commercially strong based on its previously uncontested use of the mark and its recognition value to customers. The Second Circuit in *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996), stated that five years of uncontested registered use of a mark sufficiently demonstrates that a mark is strong. WorldCare has demonstrated that it used the WORLDCARE mark, uncontested, for nearly ten years. Based on this use, WorldCare is likely to show that its use of the WORLDCARE is commercially strong among the class of customers and potential customers in the relevant market.

World Insurance counters that this period of uncontested use is insufficient because World Insurance has used its iteration of the WORLDCARE mark simultaneously with WorldCare for the last seven years. It is axiomatic that the "proper function of a trade-mark is that by association with goods it becomes a means of identification of the origin or ownership of the article and hence a symbol of good will." *Seven Up Co. v. Cheer Up Sales Co. of St. Louis, Mo.*, 148 F.2d 909, 910 (8th Cir. 1945). WorldCare's use of the WORLDCARE mark serves that function because the mark for its product and services is also the name of the company, thus identifying the origin of the services. That fact, combined with the extent and actual use by WorldCare of the WORLDCARE mark suggest that WorldCare is likely to demonstrate the strength of its mark. For that reason, the strength of the WORLDCARE mark is not diminished by World Insurance's simultaneous use.

World Insurance also argues that the WORLDCARE mark is weak because similar marks are in use by several charitable organizations and by at least one other insurance company. However, the relevant market for each of these is not the same as that of the parties. Customers or potential customers of charitable organizations are clearly part of a separate market. The other medical insurance company identified by World Insurance uses the mark "World Care Alliance Group." However, the World Care Alliance Group focuses its market specifically on unions, while the parties in this case target a much broader health care market. Thus, the evidence of other companies' use of the words "world care" in their names and products does not weaken the WORLDCARE mark as used by WorldCare.

B. Similarity of the Owner's Mark and the Alleged Infringer's Mark

Under the second factor, the Court considers the similarity between the iterations of WorldCare and World Insurance's marks. Courts employ "sight, sound, and meaning" to assess the similarity of the marks. *Sunsient*, 613 F.3d at 765. The Eighth Circuit has "continually held the use of identical dominant words does not automatically equate to similarity between marks." *Id.* However, in this case, there is no aural or significant visual difference between the parties' respective iterations of the WORLDCARE mark. As noted by the PTO, the dominant wording of the marks is identical. Although the PTO office analyzed WorldCare's WORLDCARE GLOBAL HEALTH PLAN mark, it noted that consumers would likely contact WorldCare under the WORLDCARE mark because it is the dominant wording. The PTO stated:

> Consumers likely would not use the descriptive wording in [WorldCare's] mark to call for the services. WORLDCARE is the dominant feature in [WorldCare's] mark, and because this wording is identical to the wording in

11

> [World Insurance's] mark, consumers would likely be confused as to the source of the services.

(Filing No. 25-8 at 2.)

The PTO's analysis is persuasive as to the similarity of the marks. That World Insurance frequently uses its iteration of the WORLDCARE mark in conjunction with World Insurance's house mark does not diminish the similarity between the dominant wording of the marks. World Insurance's evidence does not indicate that its use of the WORLDCARE mark is always or predominantly associated with the World Insurance house mark. Thus, customers may encounter both marks in circumstances that may cause confusion. Based on the similarity of the dominant wording of the parties' marks, WorldCare is likely to show that the marks are similar in sight, sound, and meaning.

### C. The Degree of Competition Between the Products

The third factor compares the degree of competition between products.[1] *Id.* at 766. "If the two companies' products are closely related, confusion among customers is more likely." *Id.* "Confusion, however, may exist in the absence of direct competition." *Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 774 (8th Cir. 1994). For example, the presence of a parody advertisement on the back cover of a magazine, a traditional place for real advertisements, threatens to confuse customers accustomed to seeing real ads there. *Id.* In other words, "confusion, not competition, is the touchstone of trademark infringement." *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 (8th

---

[1] This factor also affects the similarity between the marks. *See e.g. Sunsient*, 613 F.3d at 765 (courts "evaluate the impression the entire mark is likely to have 'on a purchaser exercising the attention usually given by purchasers of such products.'") (quoting *Duluth News-Tribune*, 84 F.3d at 1097)).

Cir. 1987). In *Mutual of Omaha*, the alleged infringer placed on t-shirts and coffee mugs a parody of a trademark used in commerce by Mutual of Omaha Insurance Company. Mutual of Omaha also used its marks on t-shirts and mugs to be used as gifts or incentives for employees and customers. The Eighth Circuit determined that "by putting his design on items similar to those on which Mutual puts its marks, [the alleged infringer] increased the likelihood of confusion." *Id.*

Here, the parties' products and markets are sufficiently related that consumers may be confused. WorldCare's product is sold through insurance programs. Customers can purchase WorldCare's access to second-opinion medical services as a rider to their health insurance policies. World Insurance's product offered under the WORLDCARE mark is a medical insurance plan. Like the marks at issue in *Anheuser-Busch* and *Mutual of Omaha*, the evidence suggests that consumers may encounter both marks in similar settings, increasing the likelihood of confusion.

World Insurance argues that the relevant markets are not proximate, in part, because the PTO's analysis focused solely on WorldCare's use of the WORLDCARE GLOBAL HEALTH PLAN mark. The PTO's decision compared World Insurance's mark and the WORLDCARE GLOBAL HEALTH PLAN mark and noted that confusion was likely because the products offered were identical. World Insurance argues that since the PTO's decision only examines WorldCare's WORLDCARE GLOBAL HEALTH PLAN mark, it should be presumed that the PTO determined that WorldCare's other marks were not proximately related or confusingly similar to World Insurance's mark. However, the PTO specifically noted that the "goods and services of the parties need not be identical" and that "they need only be related in some manner, or the conditions surrounding their marketing

13

be such that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods and/or service come from a common source." (Filing No. 25-8 at 2 (supporting citations omitted)). As stated above, the products offered under the competing marks could be encountered by common purchasers under circumstances that could cause confusion. Therefore, WorldCare is likely to show that the products are in competitive proximity.

### D. The Alleged Infringer's Intent to Pass Off its Goods as the Trademark Owner's

The fourth factor analyzed is "whether the alleged infringer intended to pass off its goods as the trademark owner's goods." *Sunsient*, 613 F.3d at 766. WorldCare need not prove bad intent, but "the absence of such intent is a factor to be considered." *Frosty Treats*, 426 F.3d at 1008. "Knowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." *General Mills, Inc. v. Kellog Co.*, 824 F.2d 622, 627 (8th Cir. 1987). Here, besides World Insurance's knowledge, there is little evidence to show World Insurance intended to pass off its products as those of WorldCare.

### E. Incidents of Actual Confusion

The Court also examines incidents of actual confusion. *Sunsient*, 613 F.3d at 768. Although such incidents serve as proof of likelihood of confusion, WorldCare is not required to show incidents of actual confusion to succeed on its infringement case. *Id.* (citing *SquirtCo.*, 628 F.2d at 1091). The Eighth Circuit has stated that negligible confusion at the time immediately following the defendant's adoption of the allegedly confusing mark does not show evidence of actual confusion. *Id.* Regarding misdirected phone calls, the

14

Eighth Circuit has stated that "vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'" *Duluth News-Tribune*, 84 F.3d at 1098. To analyze the impact of evidence of actual confusion, the Court must "look to whether an appreciable number of ordinary purchasers are likely to be so misled." *Id.* at 1099.

In this case, WorldCare claims evidence of actual confusion because in the summer of 2009 it began receiving calls regarding insurance products. It is difficult to determine whether these incidents of confusion amount to "vague evidence of misdirected phone calls" or whether they occurred under circumstances that would lead an appreciable amount of customers to be misled. Because of the limited evidence, the Court cannot conclude that by these inquiries WorldCare is likely to show instances of actual confusion.

### F. The Type of Product, Its Cost, and Conditions of Purchase

The final likelihood-of-confusion factor examines the conditions of purchase and the degree of care expected of customers. *Sunsient*, 613 F.3d at 769. "In considering this factor, [the Court] must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Luingino's*, 170 F.3d at 831. The weight given this factor is "more important in confusion-of-source cases where the degree of care that the purchaser exercises in purchasing a product can eliminate the confusion that might otherwise exist." *Frosty Treats*, 426 F.3d at 1010. For example, in *Duluth News-Tribune*, the Eighth Circuit found that newspaper purchasers would exercise some care when

subscribing to a paper because "[c]ustomers who spend the money and effort to subscribe to a newspaper are likely to know which paper they are buying, and to complain if they get the wrong one." 84 F.3d at 1099.

The parties have not argued this factor extensively, but the evidence before the Court favors a preliminary injunction. Although customers would certainly exercise a fair amount of care when selecting medical insurance products, the similarity of the marks may be too great to overcome the customer's degree of care. To evaluate consumer confusion, the Court must not attempt to determine what it would do, but "what a reasonable purchaser in market conditions would do." *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 505 (8th Cir. 1987). When selecting medical coverage and related products, a customer or potential customer may not recognize that distinct products with different WORLDCARE marks would come from different sources. In that narrow context, the competing iterations of similar marks may cause confusion despite a consumer's degree of care. Accordingly, this factor favors WorldCare.

G.  Summary

Weighing the factors, the Court is satisfied that WorldCare is likely to demonstrate consumer confusion between the marks. Though the evidence before the Court does not conclusively establish any incidents of actual confusion or bad faith on the part of World Insurance, the other factors weigh sufficiently in favor of WorldCare to demonstrate a likelihood of confusion in the relevant marketplace between the parties' WORLDCARE marks.

3.   **The Threat of Irreparable Harm to the Movant**

Because trademarks represent "intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that Kellogg can demonstrate a likelihood of consumer confusion." *General Mills*, 824 F.2d at 625. Because WorldCare Has demonstrated a likelihood of confusion, the threat of irreparable harm is presumed? *See id.*

4.   **Public Interest**

In some cases, confusion in the marketplace is sufficient to demonstrate public interest favoring the granting a preliminary injunction. *See Coca-Cola Co. v. Purdy*, 382 F.3d 774, 789 (8th Cir. 2004)*; Mutual of Omaha*, 775 F.2d at 249. The public interest in avoiding consumer confusion is applicable in this case. The parties' uses of the WORLDCARE marks both arise in the context of medical insurance and medical care. A strong public interest exists in preventing confusion as to the source of products and services included in a medical coverage insurance policy, and as to who will be providing those services. Because customers will encounter both marks in the medical care context, the public interest is served by a preliminary injunction.

## CONCLUSION

WorldCare has demonstrated that each of the *Dataphase* factors weighs in favor of the issuance of a preliminary injunction, and World Insurance's own actions minimize its burden under the injunction. Accordingly,

IT IS ORDERED:

1.   The Motion for Preliminary Injunction (Filing No. 5) filed by Plaintiff WorldCare Limited Corporation, is granted; and

17

2. Defendant World Insurance Company and its officers, agents, servants, employees, and all persons acting in concert with World Insurance, are enjoined from using the designation "WORLDCARE" or any other name or mark confusingly similar to "WORLDCARE," either alone or in combination with other words or symbols, as part of any trademark, service mark, trade name, product name, corporate name, assumed name, domain name, Web site name, email address or in any other manner in connection with healthcare or medical-related services during the pendency of this action

DATED this 9th day of May, 2011.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              United States District Judge